Thank you Judge Dennis and may it please the court. When counsel for a criminal defendant fails to tell his client about a potentially favorable plea option before it is too late to select the appropriate plea option, the court may not be able to decide whether to proceed with the case or not. Counsel performs deficiently under the Sixth Amendment. That has been the law on this circuit for nearly 40 years and the Supreme Court recognized that principle in Missouri v. Frye. This case involves a straightforward application of those precedents. There's no analytical difference between failing to tell a client about a plea offer, which is what occurred in Frye, and failing to tell a client that he may plead guilty without a plea agreement before trial, which is what occurred in this case. Both failures deprive a criminal defendant of the chance to make an intelligent decision about whether to take a potentially favorable plea option. I'd like to focus my time to evidence that your client would have. The evidence Miss Judge Ho is threefold. First, at the evidentiary hearing, Mr. White testified that he would have pled guilty before trial without a plea agreement if he knew that that was an option. Secondly, there was a discrepancy between the sentence that he would have faced. I'm sure you know the district court said that your client would have wanted to go to trial regardless. He felt it's just as many defendants do that they wanted their day in court and therefore it really didn't matter what the plea discussions might have entailed. Yes, Judge Ho, and that conclusion by the district court is subject to de novo review, and here's why. The district court did not apply the full, complete analytical framework for the question of whether counsel's failure to advise of an open plea prejudiced the defendant. The district court concluded that Mr. White was not prejudiced because he rejected the government's plea offer. However, the district court never asked the relevant question in this context, which is whether, but for counsel's failure to tell him that he could enter an open plea, whether Mr. White would have entered the open plea. Is the open plea issue before us? I'm looking at the scope of the COA and I'm not understanding how that second argument applies here. Do you have a second to question Ms. Minniter? I think her screen is stuck. Ms. Minniter, I just want you to know, in fairness to you and your client, your screen was frozen, so whatever you may have said, we did not hear it at all. Okay, I apologize. We apologize for the glitch there. So there are two aspects to the COA issue. One is deficient performance, which I will set aside because I don't believe the government can test whether the question of deficiency is properly before the court. The second aspect is whether the open plea claim itself is properly before the court. And I think there are two independent bases for why the open plea claim is properly before the court. First, under Jones v. Cain, if a defendant advances multiple bases of ineffective assistance of counsel in the trial court, and then the COA is issued on ineffective assistance of counsel claims without distinguishing between the bases, then this court said in Jones v. Cain that the defendant may advance all of the bases that he advanced in the trial court on appeal. Okay, but is that this case? And pardon me, it may be that I'm misreading the record, in which case I want you to correct me. I thought that the COA covers only counsel's deficient performance, causing your client to reject the government's pretrial plea offer. Is there more to the COA than that? No, Judge Ho. However, in the district court, Mr. White did advance the claim that because counsel failed to advise him that he could enter an open plea, he went to trial instead of entering an open plea. I'm not making an argument. I'm not advancing the notion that your client forfeited it in district court. The issue is whether there is a certificate of appealability on this issue that you're trying to press today. I realize you're coming in late to this case, so thank you for that service. But I still wonder why we're even allowed as a court, how we're even authorized to reach this second issue. The issue is, is it within the scope of the COA? It is within the scope of the COA for two reasons. One is under Jones v. Cain, as I mentioned, under Jones v. Cain, this court said that when a defendant advances multiple bases of ineffective assistance of counsel, which is what happened here, and then the COA doesn't distinguish between those bases, then all of the bases are properly before the court. Secondly, this court held in Camargo that if an issue is sufficiently interrelated to the certified issues, then that issue is also properly before the court. So those are two independent reasons for why the open plea claim is properly before the court. It is sufficiently interrelated to both of the claims that he has made that we know are undoubtedly certified. And he advanced the claim in the district court, and the district court COA does not distinguish between his different claims of ineffective assistance of counsel. Thank you. Go ahead. I'm happy to discuss more of the prejudice issue because that is what the government has focused on in its briefing. And the government has raised two arguments. One is that, as Judge Holm mentioned, that the district court found that Mr. White wanted to go to trial. And secondly, that he would have been worse off if he had pleaded open before trial versus taking the plea offer. And as I mentioned before, both of these arguments rest on an incorrect analytical framework. First, the district court's position, conclusion, excuse me, that Mr. White wanted to go to trial. Again, that's subject to de novo review because the district court applied an incomplete analytical framework. The proper test is not whether Mr. White would have accepted the plea offer, which is what the district court found. And that's at ROA 316. The district court recited the test that was applied. That test, the only test that the district court applied, was whether Mr. White would have accepted the plea offer. However, in this context, when we are focused solely on the question of whether counsel's failure to advise of an open plea prejudiced Mr. White, then the proper test for prejudice is whether Mr. White would have entered that open plea but for the bad advice. Secondly, in terms of whether the open plea was a worse issue, excuse me, was a worse option versus accepting the plea offer. Again, that is the wrong analytical framework. The question is not whether Mr. White would have accepted, would have been worse off if he had taken the open plea versus the plea offer. The question is whether Mr. White would have been worse off going to trial versus entering the open plea. And there, the answer is yes. Mr. White, if he had entered the open plea before trial, the government concedes that Mr. White would have received at least two points for acceptance of responsibility. We think that there's a basis to argue that Mr. White could have received the full three points. That is reflected in the Third Circuit's decision of Booth. However, even if we concede that the government is correct and Mr. White would have received only the two points, Mr. White's new sentencing range would have been between 210 months and 262 months. The government concedes that in its letter brief. In comparison, when Mr. White went to trial and was convicted, his sentencing range became 262 months to 327 months. So what was previously would have been the high end of his range became the low end of his range. Under Molina-Martinez, when a district court uses the wrong sentencing range, that is enough to establish a reasonable probability of harm from that error. Now, Molina-Martinez, the Supreme Court of Molina-Martinez, of course, was decided in a different context. That was decided in the context of challenging sentencing errors on direct appeal. However, this court has indicated, has said that the standard of reasonable probability of harm in Molina-Martinez is the same as the standard for reasonable probability of harm under Strickland. And the Third Circuit has also applied the Molina-Martinez standard in the context of Strickland. Now, in terms of to go back, Judge Ho, to your original question about whether there is proof that Mr. White would have entered the open plea, whether there's a reasonable probability that he would have and would like to discuss that briefly. I think the best case here for the court is really the Lafler decision. In Lafler, the Supreme Court agreed with the Sixth Circuit's analysis regarding reasonable probability that the defendant would have entered a plea of guilty before trial. And the Sixth Circuit based its decision on two facts. One, at the evidentiary hearing, the defendant testified that he would have pleaded guilty before trial if he had been correctly advised. And secondly, there was a discrepancy between the sentencing exposure he faced upon going to trial versus the sentencing exposure that he would have faced if he had pled guilty before trial. That was enough in the Sixth Circuit's view to establish a reasonable probability that the defendant would have pled guilty before trial. Now, the Lafler case is also very interesting for this case for another reason, which is that in Lafler, the defendant wrote a letter, just like the defendant did in this case. In Lafler, the defendant wrote a letter to the court saying, I'd like to plead guilty, but to a lesser charge. And the government in Lafler said that shows that he was not willing to plead guilty because he was trying to plead only to a lesser charge. The Sixth Circuit rejected that argument. The Sixth Circuit said, no, the fact that he was trying to negotiate a plea is actually evidence that he would have pled guilty, that he wanted to plead out. And the Supreme Court agreed with that analysis. Another case that is instructive on the question of whether Mr. White, whether it was reasonably probable that Mr. White would have entered the open plea is the case of Bennett in the Third Circuit. And there, again, the government, excuse me, the district court concluded that the defendant, that it was not credible that the defendant would have entered an open plea. Very similar facts to this case. And the district court made that conclusion based on the fact that the defendant had told his uncle before trial that he wanted to make the government prove its case. The Third Circuit found that that was a clear error, and here's why. The Third Circuit said that at the time that the defendant made that statement and said he wanted to make the government prove its case, the defendant did not have all the facts he needed to actually make a clear decision about whether to plead guilty or go to trial. He did not know, for one, that he could actually plead guilty before trial. And secondly, he didn't know what the proper sentencing exposure he faced was at trial. And therefore, it was a clear error to decide that he wanted to go to trial based on that statement. Similarly, here, it is erroneous to conclude that Mr. White wanted to go to trial simply because before trial he indicated that he was trying to negotiate a better plea offer. In fact, the fact that he sent the letter to the prosecution before trial saying, I'd like to plead out if the government could drop the sentencing enhancements and make sure that probation doesn't tack them back on after you've agreed to take them off, that actually indicates that he was willing to plead and was simply trying to negotiate a better deal. So in conclusion, there are two cases that I think really are exactly on point for establishing that there's a reasonable probability that Mr. White would have entered the open plea. Lafler is exactly on point. And then also the Third Circuit's decision in Bennett. To take your meaning that the defendant in these types of situations is entitled to decide what he would have done or should have done. He's entitled to full briefing and announced by his attorney, which didn't occur. Is that kind of your argument that you can't hold against him the fact that he may have made that remark? This is the Third Circuit, I gather. That's correct, Judge Dennis. And going all the way back to the Circuit's decision in Beckham in 1981 and Antigua in 1995, this court has said that counsel has an affirmative duty to advise the client before he decides to plead guilty or stand trial has an affirmative duty to tell the client about his available options, including whether a plea offer exists. That was Antigua in 1995. And this court explained that that's because before a client decides to stand trial and take the risk of going to trial, the client needs to have all the information that is relevant to his plea in order to make an intelligent decision. That has been the rule of this circuit for nearly 40 years. And the Supreme Court just simply recognized that in Frye. This case is a very straightforward application of those precedents. I'll reserve the remainder of my time for rebuttal. Thank you. Mr. Wisocki, did I pronounce that right? Thank you very much. May it please the court and counsel. Just briefly on the COA issue, the government does contend that the open plea claim is not within the COA. The COA was limited to whether Mr. Linder's alleged defective performance caused Mr. White to reject the plea offer that was offered to him by the government. There was no mention of an open plea. And the big issue when this case was before the court the last time was whether the magistrate judge or the district court should have held an evidentiary hearing. During that hearing, Mr. White was ably represented by James Whalen, who first questioned Mr. White about the possibility of an open plea. And Mr. White then testified that he would have done that. What's interesting about the evidentiary hearing, when you read through the transcript, is he kept saying over and over again, Mr. White, from the stand. His focus was that he would have taken the government's plea offer that was on the table and that Mr. Linder was ineffective by not telling him that by going to trial he would lose acceptance of responsibility. And on that point, the magistrate judge made a clear credibility finding that Mr. Linder, and I believe even his former counsel, Ralph De La Garza, had informed him that if he went to trial, he would lose acceptance of responsibility. And that credibility finding is not challenged in the appeal. But the bottom line is that we think that the COA issue, I mean, arguably it's close, but it really doesn't matter in this case in light of the district court's finding that no matter what, and this was based on Mr. Linder's testimony and all the circumstances at the evidentiary hearing, Mr. White, one, was insistent on going to trial because he thought that his girlfriend would testify in his favor. And he, as we point out in the letter brief, he wrote a letter to his girlfriend, Bertha Mae Russell, before trial saying, just tell them or tell your lawyer that we just ate the pseudoephedrine pills. We didn't manufacture them. So he was banking on the fact that Ms. Russell would not testify at trial. There was no possibility that he was going to plead either open or pursuant to the plea agreement in the absence of rolling the dice at trial. Counsel, it seems to me that the issue your colleague on the other side is presenting is on open pleas. We don't have much case law on the obligation of counsel to present that as an option. And maybe no case that says it's a strickland violation, not to say that it can't be. That's for us to maybe deal with. In your experience, just for my own information, are they very common, open pleas? Why isn't there more law on them? I don't know, Your Honor, why there isn't more law on them. I don't have percentages. It's very common. Probably the majority, at least in our district, are pursuant to a plea agreement, but it's certainly not uncommon to have open pleas. The issue for the defendant, as here, is just that it leaves everything on the table. So from the defendant's perspective, they have the incentive to try to get the government to release certain guideline enhancements that would apply in a written plea agreement. And of course, there's still no guarantee that the district court would accept the plea agreement. But here, that was never an option because the prosecutor was not going to let go of either of the enhancements on the table. Counsel, I appreciate your candor in describing the COA issue as a, I think you said a close call in your mind. Why, just out of curiosity, why do you think it's a close call? Just because the fact that both claims deal with the plea bargaining process. And do I understand, I mean, the language of the COA says pretrial plea offer. The open plea is an at trial, which is the opposite of pretrial. And it's not a plea offer, which is, I think, maybe not the opposite of an open plea, but certainly not an open plea. It's the absence of a plea offer. Why is this a close call? Well, I mean, Mr. White still could have entered an open plea before trial. I mean, just go in there and plead guilty to the charges. Right, but that's not the theory on the table. The theory on the table is open plea at trial. Well, that's what actually happened, is he had an open plea at trial after Ms. Russell testified. As I understand Mr. White's claim is that Mr. Linder was ineffective for not advising him of the possibility of an open plea before trial, because that way he would have gotten at least some acceptance of responsibility. Fair enough, but it's still about a plea offer, as opposed to the lack of a plea offer. Right. And I guess, honestly, Your Honor, You're just being nice. Well, like we argue in the letter brief, You're being courteous. We agree. But it's not crazy. But it's also not the Camargo case that Mr. White raises in his letter brief. In Camargo, the COA was on counsel's failure to consult about the possibility of appeal, and the questionable claim was whether the defendant's attorney had told him about the possibility of an appeal and talked with him about that. And it was really the exact same issue. I mean, there's no difference between the COA and the defendant's claim. Here, there certainly is a greater distinction, because the COA talked about a plea offer. This was not about a plea offer. And again, it's really not even Mr. White's claim, or at least it wasn't in the district court. He kept going back and back to, I would have taken the government's plea offer if I had known I would lose acceptance of responsibility. And the second piece of evidence that I think proves, apart from Mr. Linder's word, that Mr. White was intent on going to trial is the letter he wrote to the prosecutor before trial, saying, look, I'll plead guilty if probation isn't going to tag me with these two enhancements. Well, of course, an open plea wouldn't cure that. The prosecutor can't bind probation or the district court, even with the written plea agreement, and certainly not with an open plea. So that again shows, look, this guy wasn't going to go to trial no matter what. And that goes also to the ineffective assistance problem, because you have to look at it from the perspective of Mr. Linder at the time he's dealing with his client. And what he's hearing is, I want to go to trial. I don't think Ms. Russell will testify. And I'm not going to agree to either of these enhancements. And so what's presented before him, maybe in a perfect world, he'd say, yeah, there's this possibility of an open plea, but it would be dumb for you to do it because you would only be guaranteed two acceptance points instead of three. He didn't do that, but it didn't matter because there was already a better plea on the table, and Mr. White still didn't want to accept that one. So that's really all we had, Your Honors. Unless the court has any questions, we just rest on our briefing. Thank you, sir. Ms. Manninger, you have five minutes on the button. Thank you, Judge Dennis. So I'd like to address first the issue of whether Mr. White's counsel had reason to actually advise Mr. White about the open plea option. The answer is yes, and I think the case that is directly on point there is the Booth case in the Third Circuit. There, the Third Circuit said that when a client is deciding whether to go to trial or accept a government's plea offer and the possibility of conviction at trial is very high and counsel knows that his client does not want to accept the plea offer on the table, then there is another option that is available, and that is to advise the client that he may enter an open plea. The reason why that is actually not a dumb option is because if the client does not want to accept the plea offer, then that's already off the table. He's not going to get the benefits of that plea offer. Then the next question is, well, what's his next best option? At the very least, if he pleads guilty before trial, he will receive, as the government concedes, at least two points for acceptance of responsibility. That is exactly the case here. If Mr. White had pled guilty before trial, he would have gotten those two points, as the government admits. His sentencing guideline range would have been better. It would have been 210 months to 262 months, as opposed to his sentencing guideline range upon conviction at trial, which was 262 months to 327 months. That is why under Booth, it's very clear that a counsel had a duty to tell his client that he could plead open. It was a better option than going to trial. At the very least, it was an option that the client had a right to consider to determine whether he wanted to take his chances and go to trial and have the maximum statutory sentencing exposure. In terms of the letter, again, the government argues that the letter casts doubt on whether Mr. White would have pleaded guilty before trial. The Lafler decision is exactly on point on this issue. The Lafler decision says that no, a defendant's attempt before trial to try to negotiate a better plea offer than what is on the table is actually evidence of a willingness to plead guilty. It actually counts in favor of concluding that there's a reasonable probability that the defendant would have pled guilty. That is what the Sixth Circuit found in Lafler when the Supreme Court expressly agreed with the Sixth Circuit's analysis in that case on reasonable probability. In terms of the COA issue and whether this claim is properly before the court, I would like to make just two quick points there. The district court allowed Mr. White because at the evidentiary hearing, it emerged that Mr. White's counsel admitted that he did not advise his client about the open plea option and the evidentiary hearing transcript is very clear that Mr. White's counsel apparently simply overlooked the option. That is why he did not advise his client on it. When this was raised at the evidentiary hearing, the district court, the magistrate judge said, this is an important issue. It's probably a novel issue, and I'm gonna let you supplement the record with additional briefing on this issue. The government did not object to the supplementation of the record with the open plea claim. And I think it's important to point out also that during the evidentiary hearing, there was some confusion about what test for prejudice would apply in the open plea context. The government argued that in order to show prejudice from the open plea issue, specifically the open plea issue, that Mr. White would have to show that he would have accepted the plea offer. The district court said, well, I wanna give some thought to, I know that's how the test is written in Lafler, but I wanna give some thought to how it actually applies in this context. I think that that part of the evidentiary record helps to explain some of the way that the COA is worded. But even if that aspect of the COA, even if let's concede that the COA does not directly address, does not expressly address the open plea claim, nonetheless, the open plea claim is sufficiently interrelated to the other issues. Which is why, if it was true that Mr. White's only option for challenging the sentencing enhancement was to go to trial, the open plea claim would be completely moot. Under Higgins v. Cain, that is enough to make that claim properly before the court. For these reasons, we would ask that this court reverse the denial of relief for Mr. White. Thank you very much. You asked for a reversal. What is the exact order you think you were asking this court to make? We reversed. Is that it? Just it? Reversed? Judge, I think that the proper order would be to vacate the sentence and allow for resentencing in the district court. Okay. Thank you. Thank you. Ms. Mentor, you're a court-appointed serving without monetary compensation, and you've done an excellent job. We thank you for your service to your client and to the court. Thank you.